UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**HOWARD J. MOORE,**

      **Plaintiff,**        **CIVIL ACTION NO. 07-15417**

  vs.

                             **DISTRICT JUDGE ROBERT H. CLELAND**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:** This Court recommends that Defendant's Motion for Summary Judgment (docket no. 14) be DENIED, that Plaintiff's Motion for Summary Judgment (docket no. 9) be DENIED, and that the case be REMANDED for further proceedings consistent with this Report.

\*\*\*

Plaintiff filed an application for a period of disability and Disability Insurance Benefits and Supplemental Security Income on June 17, 2003, alleging that he had been disabled since December 18, 2004 due to seizures and rheumatoid arthritis[1]. (TR 32, 48, 59, 75). The Social Security Administration denied benefits. (TR 33-36). A requested *de novo* hearing was held on April 13, 2006 before Administrative Law Judge (ALJ) Richard L. Sasena who subsequently found that the claimant was not entitled to a period of disability, Disability Insurance Benefits or Supplemental

---

[1] Plaintiff amended his alleged onset date from January 1, 2002 to December 18, 2004. (TR 57).

Security Income payments because he was not under a disability at any time through the date of the ALJ's June 20, 2006 decision[2]. (TR 24). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 6-8). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Plaintiff was fifty-six years old at the time of the administrative hearing. (TR 305). Plaintiff has a high school education and an associate's degree in business. (TR 65, 306). Plaintiff has past work experience as a janitor, painter, stock clerk and supervisor. (TR 60, 315). Plaintiff lives with his wife and two children. (TR 306). At the hearing, Plaintiff testified that he was employed at an elementary school as a lunchroom aide for five hours a week and at a church doing janitorial tasks for twenty hours per week. (TR 302, 311). Plaintiff testified that he was not working full time due to his seizures and rheumatoid arthritis. (TR 303).

Plaintiff had his first seizure in 1997. (TR 303). Plaintiff stated that his last seizure prior to the hearing was in September 2005. (TR 303). Prior to that, he suffered a seizure during the summer of 2005 and in October or November 2004. (TR 303). Plaintiff takes Tegretol and Lamictal for his seizures. (TR 304). Plaintiff testified that there have been days when he did not take his medication but that he did not miss it on a regular basis. (TR 303).

Plaintiff testified that he has had arthritis for at least twenty years. (TR 304). It is in both hands and both feet and Plaintiff treats it with prescription Naprosyn. (TR 304-05). Plaintiff testified that his arthritis bother him about eight days each month. (TR 306). On those days he rates

---

[2] Claimant filed a prior application for Disability Insurance Benefits on January 5, 1999. (TR 27). A hearing was held on August 15, 2000 before Administrative Law Judge William J. Musseman who subsequently found that Plaintiff was not under a disability at any time through the date of the September 20, 2000 decision. (TR 27-29).

2

the pain at between a six and a ten on a scale of ten. (TR 308). Plaintiff testified that when the pain is at a ten, he is not able to go to work. (TR 308). Plaintiff rates the pain in his feet at "more than" a ten. (TR 309). Plaintiff testified that when the arthritis flares up he uses a cane or crutches and sometimes has to crawl. A flare-up can last from two or three days to a week. (TR 305). Plaintiff testified that he had arthritis flare-ups in the summer of 2005 and again in December 2005. (TR 305). The flare-ups are brought about by changes in the weather or if Plaintiff performs constant lifting. (TR 308). He reduces the pain by sitting in a bath of hot water, using a heating pad, or elevating the painful limb, such as by using a sling. (TR 308). Plaintiff testified that his employers at the church and school know about his condition and they are understanding about it. (TR 308).

The ALJ asked Plaintiff whether he had attempted to work forty hours per week and Plaintiff testified that he has not been able to find a job in addition to his current jobs. (TR 310). He states that employers are reluctant to hire him due to the seizure disorder. (TR 310). Plaintiff has not driven since 1997 due to the seizure disorder. (TR 310). Plaintiff testified that he is able to do chores around the house and take care of his personal needs and grooming unless he is having an arthritis flare-up, then his wife bathes him. (TR 91-92, 310-11). Plaintiff's past times are watching television, reading and writing poetry. (TR 312). Plaintiff can no longer play tennis. (TR 313).

**Medical Record**

Plaintiff has a history of a seizure disorder since 1997. (TR 117, 134). Plaintiff reported to the emergency room on February 13, 2001 for a seizure. The attending physician, Benjamin Truong, M.D., noted that Plaintiff had missed taking his Dilantin for several days and Plaintiff's Dilantin level was low. (TR 117, 124, 186). At the time, Plaintiff was taking Dilantin 100 mg, two capsules twice per day and Naprosyn, 500 mg one daily. (TR 123). Plaintiff's medical records from the February 13, 2001 admission also note that Plaintiff has a history of osteoarthritis of the ankles and

3

both hands. (TR 123). On February 27, 2001 Dr. Afeworki Kidane noted that Plaintiff had been noncompliant with his medication. (TR 187). On July 31, 2001 Dr. Kidane examined Plaintiff following a seizure the night before. (TR 181). Dr. Kidane noted that Plaintiff was supposed to have his Dilantin level checked and had never followed up. (TR 181). Plaintiff's Dilantin level was at 2. (TR 181). Plaintiff also had a seizure on February 2, 2002 which was attributed to missing one dose of Dilantin. (TR 171, 176-77).

On May 1, 2002 Plaintiff reported having no seizures since February 8, 2002. (TR 166). On August 13, 2002 Plaintiff underwent an EEG with EKG study. (TR 133). Nael M. Tarakji, M.D., noted that the study showed "an abnormal electroencephalogram due to the presence of left temporal sharp activity mainly during drowsy state." (TR 133). The doctor concluded that this was "consistent with left temporal dysfunction and probably lower threshold for seizure activity as seen in complex partial seizures." (TR 133). Plaintiff was diagnosed with dysrhythmia, grade III, left temporal. (TR 133). Results of a March 29, 2004 EEG with EKG were consistent with the August 13, 2002 study. (TR 201). On September 30, 2002 Dr. Tarakji, M.D., reported that Plaintiff "had recurrent seizure activity after he stopped taking the Dilantin." (TR 131). Dr. Tarakji described Plaintiff's condition as "complex partial seizures confirmed by the presence of epileptiform discharges from the left temporal region." (TR 131). On July 28, 2003 Dr. Tarakji saw Plaintiff for a neurological follow-up visit and noted that Plaintiff had mini-seizures which could be attributed to "lack of compliance with the medication." (TR 129). The record also contains discharge instructions prepared on July 30, 2003 for a seizure. (TR 146).

On September 24, 2003 Dr. Kidane treated Plaintiff for complaints of back pain and diagnosed muscle strain. (TR 148). Plaintiff reported that the pain started after cleaning his house

and moving boxes. (TR 148). The doctor prescribed Tylenol no. 3 and Flexeril. (TR 149).

On February 18, 2004 Dr. Tarakji noted that Plaintiff reported recurrent seizure activity and a more pronounced headache with memory and cognitive dysfunction. (TR 203). On March 5, 2004 Plaintiff reported having a seizure on February 29, 2004 for which he went to the emergency room. (TR 258). Plaintiff reported missing one dose of his Dilantin. (TR 258). At the emergency room his Dilantin level was checked and it was low. (TR 258). On March 15, 2004 Plaintiff reported having had two nocturnal seizures which required emergency room visits. (TR 202). Dr. Tarakji noted that Plaintiff reported taking his medications, however his Dilantin blood level was fluctuating. (TR 202). Dr. Tarakji switched Plaintiff to Carbatrol and continued him on Lamictal, with a decrease in Dilantin over the following two weeks. (TR 202). On March 26, 2004 Dr. Kidane noted that Plaintiff had not added the Carbatrol or decreased the Dilantin. (TR 254). Plaintiff complained of back pain and stiffness and some double vision. (TR 254). His range of motion was stiff. (TR 254). Notes from March 26, 2004 indicate that Plaintiff is "[n]oncompliant on taking medication." (TR 270).

On May 12, 2004 Dr. Kidane noted that Plaintiff's chief complaints were seeking a medication refill and a "statement for work." (TR 249). Dr. Kidane noted that Plaintiff reported that he had no seizures since his prior visit on May 3, 2004 and his dizziness and blurred vision was improved "except occasionally." (TR 245, 249). Plaintiff was taking Carbatrol and Lamictal. (TR 249). Dr. Kidane referred Plaintiff for an "eye checkup" and noted that he would follow up in two months. (TR 249). The record contains a script dated May 3, 2004 which stated "Is a patient of Hamilton Community (sic) health network. Has seizure disorder and Degenerative Joint Disease. Limitation to work 20 hr/week." (TR 248).

On June 16, 2004 Plaintiff complained of a lack of coordination of movements, dizziness and

5

a headache. (TR 242). Dr. Kidane noted that Plaintiff had ataxia which was probably secondary to the medication Lamictal. (TR 242). Plaintiff reported to the emergency room on August 26, 2004 for a headache which was diagnosed as acute sciatica and acute cephalgia. (TR 207-10). On December 31, 2004 Plaintiff reported to the emergency room with complaints of vertigo. (TR 211-21). Plaintiff underwent a stress test in March 2005 which revealed "abnormal myocardial perfusion study with mild ischemia involving a moderate sized area of the anterior wall of the left ventricle," "mild ischemia involving a moderate sized area of the inferior wall of the left ventricle," and a "[n]ormal gated SPECT examination with normal left ventricular size and contractility." (TR 222-24).

On April 8, 2005 Dr. Kidane noted that Plaintiff had reported to the emergency room on April 6, 2005 where a CT scan was negative, however, he was told that he may have had mini-strokes. (TR 230). Plaintiff reported lethargy and that he was not taking one of his medications due to the lethargy. (TR 230). On October 29, 2005 Plaintiff's treatment provider noted that Plaintiff admitted not taking his anticonvulsant medication as prescribed and reported that he had suffered no seizure activity in several years. (TR 228). Plaintiff had "no physical complaints" that date. (TR 228).

The record references Plaintiff's arthritis throughout, establishing a long history of arthritis in multiple joints. (TR 148, 157, 161, 166, 190, 191, 192, 230, 235, 238, 242, 245, 254, 258, 267-72). On May 1, 2002 Plaintiff presented to Dr. Kidane with complaints of arthritis and a heel spasm. (TR 166). Plaintiff reported partial pain relief with Naprosyn. (TR 166). Dr. Kidane noted moderate swelling on the proximal and distal phalanges and moderate tenderness on the wrist and phalanges, with some discomfort in range of motion. (TR 166). The doctor noted moderate tenderness on palpation of the heel of Plaintiff's lower extremity, but no swelling. (TR 166). On

May 7, 2002 Plaintiff underwent x-rays of his hands, wrists, ankles and feet. (TR 166). The results were negative as to Plaintiff's hands, wrists and ankles. (TR 166). The views of Plaintiff's feet showed mild degenerative changes in the base of both great toes. (TR 166).

**Vocational Expert**

The Vocational Expert (VE) classified Plaintiff's past work as a cleaner, a truck washer, a painter and a stock clerk as light exertion and unskilled, and his past job as a warehouse work as medium exertion and unskilled. (TR 315). The ALJ asked the VE, "What do employers normally allow as far as breaks during the day and also absences during a given month?" The VE testified that breaks during the day for unskilled work typically include fifteen minute morning and afternoon breaks and a half-hour lunch break with periodic bathroom breaks of short duration. (TR 316). The VE also testified that "any more than an average of once per month of random or unexcused absence would eventually lead to termination." (TR 316).

**ADMINISTRATIVE LAW JUDGE'S DETERMINATION**

The ALJ found that although Plaintiff met the disability insured status requirements through the June 20, 2006 date of the decision, had not engaged in substantial gainful activity since December 18, 2004 and suffered from a seizure disorder and degenerative joint disease, both severe impairments, he did not have an impairment or combination of impairments that met or equaled the Listing of Impairments. (TR 24). The ALJ found that Plaintiff's allegations regarding his limitations were not totally credible and he could perform his past work as cleaner, truck washer, painter and stock clerk and other light work consisting of simple routine repetitive tasks with no work at unprotected heights or around moving machinery. (TR 23-24). Therefore he was not suffering from a disability under the Social Security Act. (TR 24).

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Commissioner*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**DISCUSSION AND ANALYSIS**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

> (1) he was not presently engaged in substantial gainful employment; and
>
> (2) he suffered from a severe impairment; and
>
> (3) the impairment met or was medically equal to a "listed impairment;" or
>
> (4) he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider his residual functional capacity ("RFC"), age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. *See* §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff argues that the ALJ erred in finding that Plaintiff can perform his past relevant work because the ALJ did not make specific factual findings detailing Plaintiff's past work and how it fits his current limitations, did not properly weigh the credibility of Plaintiff's testimony and did not properly weigh the opinion of Plaintiff's treating physician.

***Whether The ALJ's Determination Of Plaintiff's Credibility Is Supported By Substantial Evidence***.

9

Plaintiff argues that the ALJ did not properly assess Plaintiff's credibility and therefore the RFC is not supported by substantial evidence.  Specifically, Plaintiff argues that the ALJ did not properly consider Plaintiff's testimony that he suffers from arthritic pain about eight days per month and if the flare-up is bad, he is not able to go to work or his statement that he has to rest for about forty-five minutes after work because he has lower back pain from standing and walking so long[3]. (Docket no. 9 at 9).

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters,* 127 F.3d at 531.  Credibility assessments are not insulated from judicial review.  Despite deference due, such a determination must nevertheless be supported by substantial evidence.  *Id.*  An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p.  "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.*  "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree.  *See id.*

Furthermore, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not

---

[3] Plaintiff also argues that the ALJ erred in finding that Plaintiff was limited by his employer's availability of work rather than his physical impairments.  However, the ALJ's conclusion on this issue is supported by Plaintiff's testimony that he has not tried to work forty hours per week because the job at the school is limited to only five hours per week and the job at the church is limited to twenty hours per week.  (Docket no. 9 at 7-8; TR 310).  The ALJ's finding on this issue is supported by substantial evidence.

reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements."  20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). In addition to objective medical evidence, the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

The ALJ's credibility assessment specifically addresses Plaintiff's reported seizure activity[4]. The ALJ's credibility assessment does not address Plaintiff's testimony concerning the severity of his pain flare-ups relating to the degenerative joint disease, including his back pain. Plaintiff testified that the most extreme of the flare-ups result in absences from work. The credibility of Plaintiff's statements has significant ramifications. The VE testified that more than an average of once per month of random or unexcused absences would eventually lead to termination. (TR 316). Therefore, if Plaintiff's testimony is to be believed, it may be preclusive of employment. The Court should remand this case so the ALJ may make further findings consistent with this opinion including the credibility of Plaintiff's statements regarding his pain flare-ups and resulting absences from

---

[4]Plaintiff does not challenge the findings related to the seizure disorder, however, it is worth noting that the ALJ's determination that the prior "seizure activity occurred when the claimant had not been taking his prescribed medications" is supported by substantial evidence, including multiple notations in the evidence showing that the reported seizures were related to instances in which Plaintiff was not taking his medications. (TR 21, 22).

11

work.

Based upon the foregoing, the Court concludes that substantial evidence does not support the ALJ's credibility assessment. Therefore, the case must be remanded so that the ALJ may conduct a re-assessment of Plaintiff's credibility, specifically citing to the facts that support his or her determination including which of Plaintiff's claims are or are not credited and the evidentiary basis for his or her conclusions. Thereafter, the ALJ should: (1) specifically state whether Plaintiff's credible complaints affect his or her RFC finding and the reasons for those decisions; and (2) conduct a new step four analysis if otherwise appropriate and proceed to a step five analysis if necessary.

## *Whether The ALJ's Determination That Plaintiff Can Perform His Past Relevant Work Is Supported By Substantial Evidence*

Plaintiff argues that the ALJ failed to make specific findings detailing the requirements of Plaintiff's past relevant work and how they fit Plaintiff's current limitations. The ALJ concluded that Plaintiff can perform his past relevant work as a cleaner, truck washer, painter and stock clerk. (TR 24). As set forth above, the case should be remanded for further findings and/or proceedings with regard to Plaintiff's credibility. If, however, the Plaintiff's RFC remains unchanged upon remand, a finding that Plaintiff can perform his past relevant work is supported by substantial evidence. "Evaluation under sections 404.1520(e) and 416.920(e) of the regulations requires careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his or her [past relevant work] to determine whether the individual can still do that work." SSR 82-62, 1982 WL 31386.

In accordance with SSR 82-62, the ALJ made specific findings of fact with respect to the following: Plaintiff's RFC, the physical and mental demands of Plaintiff's past relevant work, and

whether Plaintiff's RFC would permit a return to Plaintiff's past relevant work. (TR 23). *See* SSR 82-62. The ALJ relied on both Plaintiff's testimony regarding his past work and the VE's testimony to determine the skill level and exertional demands of Plaintiff's past work. *See* SSR 82-62 ("The claimant is the primary source for vocational documents, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work."). Plaintiff testified that at his job at the school he monitors the children and cleans tables and takes care of the trash. (TR 311). In his job at the church, he cleans the church. (TR 311).

The ALJ asked Plaintiff if he had tried to work forty hours in a week in the periods when he was not having arthritis flare-ups and Plaintiff stated that he had not, "[b]ecause the job I have at the school, it only, it's only five hours a week and the job I have at the church, it's only, they only allow me 20 hours a week." (TR 310). The ALJ asked whether Plaintiff had looked for a third job to supplement these hours. Plaintiff responded, "Yes, I have but to no success. And then when most people, when most employers find out that I do [sic] have suffered from seizures they're reluctant to hire me . . . ." (TR 310).

The VE testified that Plaintiff's work as a cleaner, a truck washer, a painter and a stock clerk was light and unskilled and his work as a warehouse worker was medium and unskilled. (TR 315). The VE's testimony is consistent with Plaintiff's reports of the amount of weight he lifted at the custodial job, the truck washer job and the painting job; Plaintiff reported that the heaviest weight he lifted was twenty pounds and he frequently lifted less than ten pounds. (TR 98-101). Plaintiff makes no allegation that any of these jobs exceed the RFC or limitations which the ALJ found, either as Plaintiff performed the jobs or as they are customarily performed throughout the economy.

As set forth above, the case should be remanded for further findings with respect to Plaintiff's credibility. The ALJ's step four finding that Plaintiff can perform his past relevant work which was light and unskilled was consistent with the law and if Plaintiff's RFC remains unchanged, this finding is supported by substantial evidence, including Plaintiff's reports and testimony and the VE's testimony.

### *Whether The ALJ Properly Considered The Opinion Of Plaintiff's Treating Physician*

Finally, Plaintiff argues that the ALJ failed to accord controlling weight to Dr. Kidane's opinion that Plaintiff should only work up to twenty hours per week. (TR 22, 248). Dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e). The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability." *Maple v. Apfel*, 14 Fed. Appx. 525, 536 (6th Cir. 2001); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e). Therefore, the ALJ did not err in failing to conclude that Dr. Kidane's limitation equates to a finding of disability.

However, it is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference. Under 20 C.F.R. sections 404.1527(d)(2) and 416.927(d)(2), the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. The Sixth Circuit has stated that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30.

If an ALJ rejects a treating physician's opinion, he must "give good reasons" for doing so

14

in his written opinion. *See* 20 C.F.R. 404.1527(d)(2); *see also* SSR 96-5p and 96-2p. Furthermore, the Sixth Circuit has noted that the ALJ must provide good reasons for the weight given a treating source's opinion. *Wilson v. Comm'r of Social Sec'ty*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (*citing* SSR 96-2p, 1996 WL 374188, at *5).

The opinion at issue appears on a prescription pad and is dated May 3, 2004. It states, "Is a patient of Hamilton Community health network. Has seizure disorder and Degenerative Joint Disease. Limitation to work 20 hr/week." (TR 248). The ALJ considered this opinion in his decision and concluded that "there is nothing in the record to substantiate these limitations." (TR 22). This opinion and limitation is not supported by medically acceptable clinical and laboratory diagnostic techniques or other evidence of record. *See* §§ 404.1527(d)(2), 416.927(d)(2). There is no specific exertional or other limitation detailed in Dr. Kidane's note and the no duration given for the limitation. The ALJ also pointed out that despite Dr. Kidane's note, Plaintiff was already working twenty-five hours per week. The ALJ properly considered Dr. Kidane's opinion and provided reasons supported by the record for failing to adopt it.

## **CONCLUSION**

The Commissioner's decision is not supported by substantial evidence Defendant's Motion for Summary Judgment (docket no. 14) should be DENIED. Plaintiff's Motion for Summary Judgment (docket no. 9) should be DENIED. The case should be REMANDED back to the Commissioner for further proceedings consistent with this Report.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 07, 2009      s/ Mona K. Majzoub
                             MONA K. MAJZOUB
                             UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 07, 2009        s/ Lisa C. Bartlett
                               Courtroom Deputy